UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS S. MAXWELL, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MOAB INVESTMENT GROUP, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-03095-JD (WHO)<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Currently before the Court is plaintiffs Morris and Shawn Maxwell's ex parte request for a Temporary Restraining Order. Docket No. 3. As the Maxwells have failed to show serious questions going to the merits or a likelihood of success on their complaint, the motion is DENIED.

## BACKGROUND

This is the latest in a series of lawsuits (and bankruptcy proceedings) that plaintiffs Morris and Sean Maxwell have filed in an attempt to stop the foreclosure and now eviction from a property they owned at 318 Poinsettia Ave., San Mateo, California (the "Property"). In their prior lawsuit challenging foreclosure proceedings on the Property (Case No. 13-3957), the Court denied plaintiffs' motion for a Temporary Restraining Order (TRO) and dismissed the complaint as barred by *res judicata*. Case No. 13-3957, Docket No. 24. The Court subsequently allowed MOAB Investment Group LLC, who purchased the Property at a foreclosure action in September 2013, to intervene and granted MOAB's motion to expunge the *lis pendens* notice on the Property. *Id*., Docket No. 36. The Court also denied the defendants' motion for Rule 11 sanctions, but cautioned plaintiffs that they "should not file any further suits based on the occurrences underlying this action and all of their previously dismissed actions" because any such action "will certainly be frivolous, and will undoubtedly render them liable for sanctions." *Id*., Docket No. 50. The Maxwells appealed the Court's dismissal of their prior case and the expungement of the lis

pendens.  The appeals are pending.  *See* Docket No. 13-3957.

MOAB initiated an unlawful detailer action to remove plaintiffs from the Property and now that the date for eviction is close (plaintiffs do not say when the eviction may occur), plaintiffs filed this current case.  In this case, the Maxwells allege that MOAB, through defendant Mohammed Rezaian who is a principal of MOAB, conspired with defendant Daniel Rosenbledt to suppress competition at public foreclosure auctions in violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(a-d)).  Case No. 14-3095, Docket No. 1.

The Maxwells note that Rezaian and Rosenbledt pled guilty to federal charges for bid rigging and mail fraud in connection with suppressing competition at public foreclosure auctions.  Complaint, Exs. 3, 4.  The conduct at issue in the federal charges occurred between July 2008 and January 2011, and the victims of the conduct were the mortgage holders who initiated the foreclosure sales (beneficiaries).  *Id*., Exs. 1-4.  Plaintiffs contend that defendants' purchase of the Property in September 2013 was part of an ongoing bid rigging conspiracy and that plaintiffs were injured because MOAB ignored a *lis pendens* on the Property, "interfered" with the Maxwell's prior lawsuit, and are pursuing eviction of plaintiffs "in furtherance of the conspiracy."  *See, e.g*., Complaint ¶¶ 20-21, 24.

Plaintiffs have moved for an ex parte TRO seeking to restrain the defendants from proceeding with plaintiffs' eviction from the Property.  Docket No. 3.  The Maxwells argue that a TRO is necessary to prevent their irreparable injury and in light of the evidence that defendants are still engaged in the bid rigging conspiracy.  *Id*. at 2.  Plaintiffs also complain of "discrepancies" in the trustee's deed after sale.  Complaint, ¶ 21c; Declaration of Sean R. Maxwell in support of TRO [Docket No. 3] at ¶ 4.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65, a court may issue an ex parte temporary restraining order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's [] certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65.  The analysis for

granting a temporary restraining order is "substantially identical" to that for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor." *Graham v. Am. Home Mortg.*, C 13-03322 RS, 2013 WL 3989676 (N.D. Cal. Aug. 2, 2013) (citing *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

**DISCUSSION**

Plaintiffs' motion for a TRO enjoining the eviction is DENIED. Plaintiffs have not demonstrated serious questions on the merits of their claims, much less a likelihood of success on the same.

First, plaintiffs have not alleged any facts showing that *they* have been harmed from the alleged ongoing conspiracy. As outlined in the federal charges and plea agreements, the entities harmed by the bid rigging were the beneficiaries (e.g., the mortgage holders), not the mortgagees who owned the properties that were sold at the rigged auctions. Complaint, Exs. 1-4.[1] That is certainly true in the Maxwells' case because as the documents attached to their Complaint show, the amount owed to the beneficiary on the Maxwells' mortgage was $1,296,319.49, and while the September 2013 sale was $771,000, the Maxwells admit that the Property was valued only at $985,000 as of July 2013. Complaint, ¶ 21b. In no set of circumstances could the Maxwells have been financially harmed if defendants' conspired to depress the sale price of the Property below its actual value.

Second, the conduct at issue in the federal charges extended through January 2011. The

---

[1] To the extent the Maxwells argue that due to improprieties with their mortgage documents or the foreclosure process they were the true beneficiaries, that argument is foreclosed by the dismissal of their prior case. *See* Case No. 13-3095 Docket No. 24.

Maxwell's assert that evidence of the continuation of the scheme is demonstrated by the fact that the Property was purchased in September 2013 for $771,000, but the Broker's Price Option prepared in July 2013 for the sale listed the value at $985,000. Complaint, ¶ 21b.  The fact that the Property sold at auction for a price beneath the Broker's Price Option is not enough "facts to state a claim to relief that is plausible on its face" that the conspiracy is ongoing, even if the Maxwells could come up with a theory of how they were harmed by the conspiracy.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]

For these reasons, plaintiffs' motion for a TRO is DENIED.

**IT IS SO ORDERED**.

Dated: July 9, 2014

_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

---

[2] The Maxwells also complain that there are discrepancies in the deed of sale recorded by MOAB. Complaint, ¶ 21c.  However, the Maxwells had the opportunity to litigate the issue of discrepancies with the deed of sale – and MOAB's standing to intervene and seek to expunge the notice of *lis pendens* – in their prior case.  *See* Docket Nos. 27, 32 & 36.