UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS S. MAXWELL, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MOAB INVESTMENT GROUP, LLC, et al.,<br><br>        Defendants. | Case No. 14-cv-03095-WHO<br><br>**ORDER DECLARING PLAINTIFFS VEXATIOUS LITIGANTS**<br><br>Re: Dkt. No. 15 |

## INTRODUCTION

This case presents the question of when to declare a litigant "vexatious." It is the most recent in a long line of actions brought by Morris S. Maxwell and Shawn R. Maxwell ("the Maxwells") in an effort to prevent foreclosure on, and their eviction from, a residential property they owned in San Mateo, California (the "property"). Over the course of five years of near-continuous litigation, the Maxwells have brought four lawsuits in state court, two in federal district court, and one adversary proceeding in federal bankruptcy court, all aimed at maintaining possession of the property. Since the Maxwells' first state court action, the vast majority of their claims have been barred by res judicata. In a prior action in this Court, I warned the Maxwells about continuing to bring frivolous litigation. Undeterred, the Maxwells have persisted in filing iterations of the same complaint.

Defendant MOAB Investment Group, LLC ("MOAB") has moved to declare the Maxwells vexatious litigants and to impose upon them a pre-filing review order. The record in this case reveals a pattern of incessant, frivolous, and harassing litigation that is unlikely to be effectively addressed by sanctions other than a pre-filing review order. The time has come to check the Maxwells' repeated attempts to relitigate the same allegations and issues despite multiple orders from state and federal courts finding the Maxwells' claims are precluded. MOAB's motion is

GRANTED.

**BACKGROUND**

In January 2007, the Maxwells borrowed $830,000 from IndyMac Bank, F.S.B. and secured the loan with a deed of trust to the property. RJN Ex. 2 at 3-4. The deed of trust designated IndyMac Bank, F.S.B. as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and First American Title Insurance Co. as the trustee. RJN Ex. 9 at 2. Between 2007 and 2010, the beneficiary changed from MERS to IndyMac Federal Bank, and then from IndyMac Federal Bank to Deutsche Bank National Trust Company, N.A. ("Deutsche"). RJN Ex. 2 at 3-4. In 2008, Quality Loan Services Corp. ("Quality Loan") replaced First American Title Insurance Co. as the trustee. RJN Ex. 2 at 3-4. Quality Loan filed a notice of default in December 2008 and a notice of trustee's sale in March 2009. RJN Ex. 2 at 3-4. As a result of the numerous actions filed by the Maxwells, discussed in more detail below, the trustee's sale did not occur until August 2013, at which point MOAB purchased the property at a public foreclosure auction. RJN 13 at 1-2. When the Maxwells refused to surrender possession, MOAB filed an unlawful detainer action in the Superior Court of California, San Mateo County. Dkt. No. 12 Ex. 2. The court granted summary judgment for MOAB on February 26, 2014. Dkt. No. 12 Ex. 3.

Between April 2009 and July 2014, the Maxwells brought four lawsuits in state court, two in federal district court, and one adversary proceeding in federal bankruptcy court, all aimed at maintaining possession of the property. The following is a summary of those actions:

***Maxwell v. Quality Loan Serv., Inc.***
**Case No. CIV482969 (Cal. Super. Ct. Apr. 9, 2009)**

The Maxwells filed their first state court case on April 9, 2009 in San Mateo County Superior Court. RJN Ex. 1. They amended their complaint three times, naming different defendants and alleging different causes of action each time. RJN Ex. 9 at 3-6. Named defendants included Quality Loan, MERS, Duetsche, the Federal Deposit Insurance Corporation, and One West Bank, F.S.B. ("One West"). RJN Ex. 9 at 3-6. Alleged causes of action included negligent misrepresentation of fact, intentional misrepresentation of fact, breach of fiduciary duty,

2

violations of California's Unfair Competition Law, fraud, wrongful foreclosure, breach of contract, violations of California's Rosenthal Act, quiet title, and negligent interference with prospective economic relations. RJN Ex. 9 at 3-6. The Maxwells' primary contention in the case, as it was in all but one of the six cases to follow, was that the assignments between beneficiaries to the deed of trust were ineffective and/or fraudulent. Although the Superior Court denied the Maxwells' first request for a preliminary injunction in June 2010, the Maxwells filed three additional preliminary injunction requests, all of which were either denied by the court or voluntarily withdrawn by the Maxwells. RJN Ex. 9 at 3-6. On December 10, 2011, the court sustained without leave to amend Deutsche and One West's demurrers as to all but one of the causes of action in the Maxwells' third amended complaint. RJN Ex. 9 at 5. On August 24, 2012, the Maxwells voluntarily dismissed the action. RJN Ex. 2 at 7.

***Maxwell v. One West Bank, F.S.B.***

**Bankr. Adv. Case No. 12-03127 (Bankr. N.D. Cal. Aug. 27, 2012)**

The Maxwells filed for Chapter 13 bankruptcy on June 28, 2012. *Maxwell v. Deutsche Bank Nat'l Trust Co.*, No. 13-cv-03957-WHO (N.D. Cal. Aug. 26, 2013) ("*Maxwell I*"), Dkt. No. 15, Ex. 22. On August 27, 2012, three days after voluntarily dismissing their initial state court action, the Maxwells filed an adversary proceeding against Quality Loan, One West, and Deutsche. *Maxwell I*, Dkt. No. 15, Ex. 23. In the words of the Bankruptcy Judge, the adversary proceeding alleged "largely the same facts and claims for relief as those…asserted in the state court action." RJN Ex. 2 at 7. The Bankruptcy Judge held that all but one of the Maxwells' causes of action was precluded under res judicata. RJN Ex. 2 at 7-13. The remaining cause of action, brought under the Truth in Lending Act, was dismissed because the statute of limitations had expired. RJN Ex. 2 at 7. The Ninth Circuit Bankruptcy Appellate Panel dismissed the Maxwells' appeal of the Bankruptcy Judge's order for mootness and lack of prosecution. RJN Ex. 5 at 2.

***Maxwell v. Deutsche Bank Nat'l Trust Co.***

**Case No. CIV 521169 (Cal. Super. Ct. Apr. 16, 2013)**

On April 16, 2013, the Maxwells filed a second action in San Mateo County Superior

Court, naming Deutsche and One West as defendants and alleging causes of action for (1) violation of California Civil Code section 2923.5, (2) violation of California Civil Code section 2923.55, (3) injunctive relief under California Civil Code section 2924.12, and (4) fraudulent execution of trust deed. RJN Ex. 8. The Maxwells' requests for a temporary restraining order ("TRO") and a preliminary injunction were both denied for failure to show a likelihood of success on the merits. RJN Exs. 6-7. On August 5, 2013, the court sustained without leave to amend Deutsche and One West's demurrer against all four causes of action. RJN Ex. 8. The court dismissed the fourth cause of action under res judicata, reasoning that "while different facts are alleged here, the gravamen of the claim is the same: that there is something allegedly deficient about the assignment, which affects the chain of title, thereby depriving Deutsche Bank its beneficial interest in the property." RJN Ex. 8.

*Maxwell v. Deutsche Bank Nat'l Trust Co.*

**Case No. 13-cv-03957-WHO (N.D. Cal. Aug. 26, 2013) ("*Maxwell I*")**

The Maxwells made their first appearance in this Court on August 26, 2013, filing a complaint against Deutsche, One West, and Meridian Foreclosure Services. *Maxwell I*, Dkt. No. 1. The complaint alleged four causes of action: (1) violation of California Business and Professions Code 17200; (2) void assignment of deed of trust; (3) violation of California's Consumers Legal Remedies Act; and (4) violation of the Fair Debt Collection Practices Act. *Id.* On August 27, 2013, I denied the Maxwells' TRO request for failure to show a likelihood of success on the merits. *Id.* at Dkt. No. 8. I explained: "The plaintiffs have raised identical and related claims in both state and bankruptcy courts against Deutsche Bank and One West Bank, and have not succeeded in their claims despite multiple opportunities to amend…[The plaintiffs do not] explain, given their numerous attempts to litigate this matter, how what they have alleged is sufficiently different from their prior lawsuits such that the plaintiffs are now likely to succeed on the merits." *Id.* On October 30, 2013, I found that all four causes of action were precluded by the prior state and bankruptcy court actions and dismissed the Maxwells' complaint with prejudice. *Id.* at Dkt. No. 24.

On November 5, 2013, MOAB filed a motion to intervene and requested expungement of a

lis pendens the Maxwells had filed against the property. *Id.* at Dkt. No. 26. I granted the motion to intervene, expunged the lis pendens, and awarded attorney's fees to MOAB upon finding that the Maxwells lacked substantial justification in filing the lis pendens. *Id.* at Dkt. Nos. 27, 36. I also noted the Maxwells' "history of persistent and unwarranted litigiousness." *Id.* at Dkt. No. 36. According to MOAB, the Maxwells have not yet paid the ordered attorney's fees. Mot. 5.

On January 27, 2014, I denied Deutsche and One West's motion for Rule 11 sanctions against the Maxwells. *Id.* at Dkt. No. 50. In declining the motion, I included the following warning:

> "The plaintiffs' history of litigation and delay is troubling. The courts are not vehicles for hindering proper foreclosure proceedings that occur due to the plaintiffs' default on their mortgage. To date, and across multiple courts, the plaintiffs have failed to show any cognizable claim for relief…The plaintiffs are warned that they should not file any further suits based on the occurrences underlying this action and all their previously dismissed actions – any such suit is barred by res judicata or collateral estoppel, will certainly be frivolous, and will undoubtedly render them liable for sanctions."

*Id.*

The Maxwells appealed the dismissal of the case and the expungmenet of the lis pendens. *Id.* at Dkt. Nos. 33, 42. On June 23, 2014, the Maxwells filed an emergency motion to add a party to the appeal (i.e., MOAB) and a motion to stay (i.e., their eviction from the property). RJN Ex. 13. The Ninth Circuit denied both motions on June 30, 2014. RJN Ex. 13. On the same date, the Ninth Circuit dismissed the Maxwells' appeals for failure to file an opening brief. *Maxwell I*, Dkt. No. 53.

***Maxwell v. Deutsche Bank Nat'l Trust Co.***

**Case No. CIV524067 (Cal. Super. Ct. Sept. 10, 2013)**

On September 10, 2013 approximately two weeks after filing their first action in this Court, the Maxwells filed a third action in San Mateo County Superior Court. *Maxwell I*, Dkt. No. 30, Ex. 35. The complaint named Deutsche, One West and Meridian Foreclosure Services as defendants and alleged causes of action for (1) wrongful disclosure, (2) quiet title, and (3) slander of title. *Id.* The Maxwells voluntarily dismissed the case on January 13, 2014, shortly before a

1   scheduled hearing on Deutsche and One West's demurrer. RJN Ex. 15. A subsequent order in
2   another state court case observed that the Maxwells' claims were barred by res judicata. RJN Ex.
3   15.

   ### *Maxwell v. Deutsche Bank Nat'l Trust Co.*
   **Case No. CIV52667 (Cal. Super. Ct. Feb. 7, 2014)**

The Maxwells filed their fourth state court action in San Mateo County Superior Court on February 7, 2014. RJN Ex. 12. This was just eleven days after I issued the order warning the Maxwells that any further lawsuits based on the occurrences alleged in their prior actions would be barred by res judicata, would be frivolous, and would render them liable for sanctions. *Maxwell I*, Dkt. No. 50. The complaint was based on "the same allegations [as the Maxwells' prior lawsuits]: that the assignment of the deed of trust was invalid or imperfect and defendants do not have any interest in the loan and no right to foreclose." RJN Ex. 12. On March 3, 2014, the Superior Court dismissed the Maxwells' TRO request. RJN Ex. 11. On May 22, 2014, the court dismissed all causes of action with prejudice, holding that "[w]ithout any doubt whatsoever, this case is barred [by] res judicata." RJN Ex. 12. In its order dismissing the case, the court observed: "[I]t matters little if the order herein stated is posted in ALL CAPS, for the reality is that plaintiffs refuse to accede to the power of the courts to issue final rulings on issues surrounding [this] litigation." *Id.*

Defendants in the case moved for sanctions against the Maxwells. RJN Ex. 15. On July 15, 2014, the court granted the motion and ordered the Maxwells to pay the defendants $17,685. *Id.* The court wrote:

> "Irrespective of multiple court orders dismissing their claims, plaintiffs continue to abuse the process of the courts by filing unmeritorious actions…The Court agrees [with defendants] that plaintiffs must be deterred in some fashion such that they finally put an end to the abusive manner in which they have utilized the courts during the past six years. It is evident to…this Court…that the purpose of the Maxwells' continued pursuit of these claims is not because there is any legal recourse, but rather it is their intention to delay the foreclosure [on] their former home, harass the defendants, and frustrate the justice system."

*Id.*

*Maxwell v. MOAB Inv. Grp., LLC*

**Case No. 14-cv-03095 (N.D. Cal. Jul. 8, 2014) ("*Maxwell II*")**

On July 8, 2014, the Maxwells filed the instant action. Dkt. No. 1. The complaint alleged that MOAB, through its principal Mohammed Rezaian, conspired with Daniel Rosenbledt to suppress competition at public foreclosure auctions in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act. Dkt. No. 1. The complaint included exhibits demonstrating that Rezaian and Rosenbledt had pled guilty to federal charges for bid-rigging and mail fraud in connection with suppressing competition at public foreclosure auctions between July 2008 and January 2011. Dkt. No. 1 Exs. 1-4. The Maxwells asserted that MOAB's purchase of the property and efforts to evict the Maxwells were performed in furtherance of the bid-rigging conspiracy. Dkt. No. 1.

On July 9, 2014, I denied the Maxwells' TRO request for failure to demonstrate a likelihood of success on the merits. Dkt. No. 10. I reasoned that the Maxwells had failed to show how the alleged bid-rigging conspiracy harmed them, and that the conduct at issue in the federal charges extended only through January 2011, while MOAB purchased the property in September 2013. Dkt. No. 10. Two days later, on July 11, 2014, the Maxwells voluntarily dismissed the case. Dkt. No. 14. MOAB filed the instant motion on July 17, 2014. Dkt. No. 15.[1]

**LEGAL STANDARD**

The Ninth Circuit recognizes "the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Under the All Writs Act, 28 U.S.C. § 1651(a), "enjoining litigants with abusive and lengthy litigation histories is one such restriction that courts may impose." *Ringgold-Lockhart v. Cnty. of Los Angeles*, No. 11-57231, 2014 WL 3805579 at *2 (9th Cir. Aug. 4, 2014). A court may declare a party a vexatious litigant and impose upon him a pre-filing restriction where the court complies with certain

---

[1] The documents submitted for judicial notice by MOAB indicate that, in addition to the actions described above, between 2009 and 2014, each of the Maxwells filed at least four bankruptcy petitions, all of which were dismissed prior to confirmation. *See* RJN Exs. 16-21.

1 procedural and substantive requirements. *Id.* at *2. The court must (1) give the party notice and
2 "an opportunity to oppose the order before it [is] entered;" (2) create an adequate record for review
3 which includes "a listing of all the cases and motions that led the district court to conclude that a
4 vexatious litigant order was needed;" (3) "make substantive findings as to the frivolous or
5 harassing nature of the litigant's actions;" and (4) craft an order that "is narrowly tailored to
6 closely fit the specific vice encountered." *De Long*, 912 F.2d at 1147-48. "[P]re-filing orders are
7 an extreme remedy that should rarely be used." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d
8 1047, 1057 (9th Cir. 2007). "Nevertheless, flagrant abuse of the judicial process cannot be
9 tolerated because it enables one person to preempt the use of judicial time that properly could be
10 used to consider the meritorious claims of other litigants." *Id.* at 1057 (internal punctuation and
11 citation omitted).

## DISCUSSION

### A.  Notice and Opportunity to Be Heard

This first procedural requirement is satisfied. MOAB's motion to declare the Maxwells vexatious litigants provided them with notice, as did this Court's order on August 15, 2014 rescheduling the hearing on the motion. *See* Dkt. Nos. 15, 16. The motion and the order were both served on the Maxwells. *See* Dkt. Nos. 15, 16. The Maxwells had an opportunity to oppose MOAB's motion in writing and again at the hearing in this Court on September 17, 2014. *See Molski*, 500 F.3d at 1058 ("Molski had fair notice of the possibility that he might be declared a vexatious litigant…because the district court's order was prompted by a motion filed by the defendants and served on Molski's counsel. Also, Molski had the opportunity to oppose the motion, both in writing and at a hearing."). The Maxwells submitted an opposition brief on September 16, 2014, the day before the hearing, but did not appear at the hearing itself. *See* Dkt. No. 17.

### B.  Adequate Record for Review

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long*, 912 F.2d at 1147. In *Molski*, the record at the district court was adequate where it included a complete list of

cases filed by Molski in the Central District of California and copies of the complaints from many of those cases. *Molski*, 500 F.3d at 1059. The district court's vexatious litigant order did not list every case filed by Molski, but it outlined and discussed many of them. *Id.* Likewise, in *Ringgold-Lockhart*, the Ninth Circuit held the district court's record was adequate where the vexatious litigant order included a list of federal cases filed by the party, copies of twenty-one different filings from those cases, and a citation to a California Court of Appeal decision discussing the party's litigation history and declaring her a vexatious litigant under California law. *See* 2014 WL 3805579, at *4.

The relevant state, federal and bankruptcy court actions filed by the Maxwells are discussed above, and MOAB has submitted various judicially noticeable filings from those actions. Other motions previously submitted by MOAB in this case and in the related case *Maxwell I* include additional filings from the Maxwells' relevant litigation history, and I have cited to those documents where I relied on them. The record is adequate for review.

### C. Substantive Findings

The Maxwells may only be declared vexatious litigants if their litigation has been either frivolous or harassing. Whether litigation is frivolous is determined by looking at "both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Ringgold-Lockhart*, 2014 WL 3805579, at *4. The Ninth Circuit has not set a numerical baseline for frivolousness but has noted that the party must have filed an "inordinate" number of actions. *Id.* (citing various vexatious litigant decisions involving between 35 and 600 different filed cases). As to the content of the filings, the party's claims must be "patently without merit." *Molski*, 500 F.3d at 1059. Litigation is harassing where "the litigant's filings show a pattern of harassment." *Ringgold-Lockhart*, 2014 WL 3805579, at *5. The court's inquiry should focus on "whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court." *De Long*, 912 F.2d at 1148 n.3.

The Ninth Circuit has also identified five factors to guide courts in considering whether litigation qualifies as either frivolous or harassing:

(1) the litigant's history of litigation and in particular whether it entailed

> vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Molski*, 500 F.3d at 1058. The final factor is particularly important in light of the seriousness of restricting access to the courts. *Ringgold-Lockhart*, 2014 WL 3805579, at *3.

Applying these factors to the instant case, I conclude the Maxwells are vexatious litigants. First, the majority of their litigation has been duplicative of their initial state court action. Court after court has informed the Maxwells in plain terms that their claims are precluded, yet the Maxwells have persisted in bringing the same or similar claims based on the same or similar underlying facts. Although the Maxwells' most recent action in this Court was not precluded, it was "patently without merit," *Molski*, 500 F.3d at 1059, and the Maxwells' decision to voluntarily dismiss the case just three days after filing it suggests they were well aware of its shortcomings. *See* Dkt No. 14.

Second, since the Maxwells' initial state court action, they have lacked an objective good faith expectation of prevailing. This is evidenced both by the fact that the majority of the Maxwells' claims have clearly been precluded, and by the Maxwells' repeated voluntary dismissals of those claims. *See Nguyen v. Bank of Am. Nat. Ass'n*, 11-CV-03318-LHK, 2011 WL 5574917, at *11 (N.D. Cal. Nov. 15, 2011) ("Plaintiff's apparently improper motive in pursuing litigation – to prevent or delay foreclosure proceedings – and repeated voluntary dismissal of those claims demonstrate a lack of good faith in bringing the actions."). As the Superior Court found in the Maxwells' fourth state court action, the Maxwells' purpose in continuing to litigate their precluded claims appears to be not to obtain legal recourse, but to "delay the foreclosure [on] their former home, harass the defendants, and frustrate the justice system." RJN Ex. 15. These are not proper motives for pursuing litigation. I repeat what I wrote the last time the Maxwells filed a lawsuit in this Court: "The courts are not vehicles for hindering proper foreclosure proceedings that occur due to the plaintiffs' default on their mortgage." *Maxwell I*, Dkt. No. 50.

In their opposition brief, the Maxwells contend they brought the instant action because

they were "genuinely…convinced that there was inappropriate and even illegal behavior on the part of…defendants in the purchase of our home."  Opp. 7.  This claim is belied by the Maxwells' decision to voluntarily dismiss the case just three days after filing it, a decision that indicates that the Maxwells brought the case not in the objective good faith expectation of prevailing, but, once again, for the purpose of "delay[ing] the foreclosure [on] their former home, harass[ing] the defendants, and…frustrat[ing] the justice system."  RJN Ex. 15.

Third, without question, the Maxwells have caused unnecessary expense to their opposing parties and have posed an unnecessary burden on the courts.  I have already ordered the Maxwells to pay their opposing party's attorney's fees once; the San Mateo County Superior Court recently did the same.  RJN Ex. 15.  Meanwhile, the Maxwells have placed on unnecessary burden on the courts by forcing them to address claims that were previously and conclusively decided in other tribunals.

Finally, I am skeptical that other sanctions would be adequate to protect the courts and other parties here.  The Maxwells have a record of disregarding court orders.  Courts have repeatedly instructed the Maxwells that their claims are precluded and without merit, while describing the Maxwells' litigation history as "troubling," "abusive," "harass[ing]," "unwarranted," and reflective of a "refus[al] to accede to the power of the courts to issue final rulings on issues surrounding [this] litigation."  RJN Ex. 15.  These orders appear to have had no effect on the Maxwells litigation tactics.  Just eleven days after I warned them that continued litigation of their precluded claims would trigger sanctions, the Maxwells filed their fourth state action, which the state court subsequently dismissed with prejudice upon finding that "without any doubt whatsoever" the claims were barred by res judicata.  RJN Ex. 12.  Further, I have already ordered the Maxwells to pay their opposing party's attorney fees once. Dkt. No. 36.  Undeterred, the Maxwells have filed two more actions since then, and MOAB reports that the Maxwells have not paid the ordered attorney's fees.  Mot. 5.  I recognize that the Maxwells have filed a fraction of the number of actions as the litigants in the cases collected by the Ninth Circuit in *Ringgold-Lockhart*.  But the Maxwells' unrelenting filings during a five year span after repeated warnings of frivolousness, in addition to the failure of fees awards and sanctions to change their behavior, lead

11

1    me to the conclusion that a narrowly tailored pre-filing review order is the most appropriate
2    method to curb their abuse of the litigation process.
3        Of the five factors identified by the Ninth Circuit, the only one that weighs against
4    granting MOAB's motion is that, for the most part, the Maxwells have not been represented by
5    counsel during the relevant litigation.  However, pro se litigants are not immune from a vexatious
6    litigation finding.  *See Bruzzone v. Intel Corp.*, No. 14-01279-WHA, 2014 WL 4090470, at *6-8
7    (N.D. Cal. Aug. 19, 2014); *Stone v. Maricopa Cnty.*, No. 07-01801, 2008 WL 4446697, at *8-9
8    (D. Ariz. Sept. 30, 2008); *Shafler v. HSBC Bank USA*, No. 06-05908-PJH, 2007 WL 578993, at
9    *4-7 (N.D. Cal. Feb. 21, 2007).  The Maxwells' pro se status notwithstanding, the record
10   demonstrates that their litigation has been both frivolous and conducted with the intent to harass.
11   The Maxwells are vexatious litigants.

### D.   Narrowly Tailored Order

I find that a narrowly tailored pre-filing review order is warranted.  I emphasize that this order is not a bar to bringing lawsuits; it merely requires a pre-filing review.  Further, it is limited to the type of claims the Maxwells have been filing vexatiously and will not deny the Maxwells' access to this District's courts on any claim that is not duplicative or frivolous.  The Maxwells must submit to pre-filing review any complaint filed in this District which concerns the foreclosure on, or the Maxwells' eviction from, the property.  The Clerk shall forward any such complaint submitted by the Maxwells to this Court for a pre-filing review.  If the complaint is duplicative or frivolous, it will not be filed and will be returned to the Maxwells.  If the complaint is not duplicative or frivolous, it will be given to the Clerk with instructions to file it.

### CONCLUSION

For the reasons discussed above, MOAB's motion to declare the Maxwells vexatious litigants is GRANTED.  Morris Sylvester Maxwell and Shawn R. Maxwell are hereby enjoined from filing any action in the United States District Court for the Northern District of California concerning the foreclosure on, or their eviction from, the property located at 318 Poinsetta Avenue, San Mateo, California, without first obtaining leave of the Court.  The Clerk shall forward any such complaint to this Court for pre-filing review.  This order extends to actions

originally brought in California state court and removed to federal court, and to adversary proceedings in this District's Bankruptcy Court.

**IT IS SO ORDERED**.

Dated: September 24, 2014



WILLIAM H. ORRICK
United States District Judge

13